## COMMONWEALTH *vs.* JAMES WHITE & another.

A. took the horse, wagon, and harness of B. from his stable by a trespass, and drove to a neighboring town. While on the way, he changed the horse for another, which was in a pasture by the roadside. He then drove to another county, and there sold the whole property. *Held,* that although when he took the property, he intended to return it, he might nevertheless be convicted of larceny in the county where he committed the trespass.

INDICTMENT for larceny from a stable, of a horse, wagon, and harness, alleged to have been committed in the county of Bristol. The stable was situated in Easton, in that county, and the property belonged to John McDonald. At the trial in the court of common pleas, before *Wells,* C. J. the evidence tended to prove that said property was in the stable of the owner, who was absent. The said James White represented to Josiah White, Jr. the other defendant, that he had hired the horse and wagon of the owner, and invited him to go to North Bridgewater. They harnessed the horse about 5 o'clock P. M. and started and met the owner. He called to them to stop, but they passed on without heeding him. They

went to North Bridgewater, and stayed there till evening, when they started on their way back. The horse becoming disabled by a fall, they unharnessed him, turned him loose, and took another horse from a pasture near the road, and harnessed him into the wagon, and proceeded into Easton on the road towards the stable of the owner. While riding along in the town of Easton, James White proposed to Josiah to go to Brighton, in the county of Middlesex. Josiah consented, and they, while in the town of Easton, turned from the road leading to the stable of McDonald, and drove to Brighton. And there Josiah, under the instruction and direction of James, put the property into the hands of an auctioneer, stating that his name was Johnson, and that the horse belonged to his father, who had given him leave to sell him. The auctioneer sold the same, but something happening to excite his suspicions, he refused to pay over the money. McDonald testified that he did not let the horse, wagon, and harness, or either of them to James White, nor had he ever let to him any horse, wagon, or harness, but that he had sometimes, but not on this occasion let to Josiah White, Sen. the wagon and harness, but never that horse; that he did not use any force to stop defendants, when he met them, because it would have been very inconvenient for him to have got off from his load, and that he expected they would return the horse and wagon.

The counsel for the defendant contended: 1. That if the property was let to James White and Josiah White, Jr. there was no larceny. 2. That if the defendant took the property without leave, although the taking was a trespass, but if he intended, when he took it, to return it, there was no larceny, although, while on the way, he should determine to appropriate the property, and should proceed to do with it as appeared from the testimony. 3. That there was no evidence of such a conversion of the property as would amount to the crime of larceny, if the property was taken without leave, but with the intention at the time of returning it.

But the court instructed the jury, that if the taking was a trespass, and if the trespasser, at the time of taking, intended to appropriate the property to his own use, the taking would

be a larceny of the entire property. If the taking was a tres-pass, but the defendant intended at the time of taking to return the property, and this intention continued until after the shifting of the horses, there was no larceny of the horse. But if afterwards and before proposing to go to Brighton, the defendant determined to take the property to Brighton and there dispose of it as his own, and he did in pursuance of that determination do that which was stated in the testimony, this would amount to larceny of the wagon and harness.

The jury found the defendant guilty of simple larceny of the wagon and harness, and not guilty of the residue of the charge in the indictment, and to these instructions the defendant excepted.

*N. Morton & B. Sanford*, for the defendant. 1. Where the original taking is a trespass, in order to support the charge of larceny, there must be a subsequent actual conversion of the property, and that conversion must take place within the county where the offence is charged. Rosc. Crim. Ev. 609 ; *Brook's case*, 8 Car. & P. 295. The doctrine of *Charlwood's case*, 2 East, P. C. 689 ; 1 Leach, 409 ; and *Sawnard's case*, 1 Leach, 214, have been overruled by *Bank's case*, Russ. & Ry. 441. The doctrine contended for is stated very strongly, in 3 Greenl. Ev. § 153 ; 2 Russ. on Crimes, 56, 57.

*L. F. Brigham*, (district-attorney,) for the commonwealth.

MERRICK, J. There appears to be no legal objection to the conviction of the defendant. The questions of fact which arose upon the trial were submitted to the jury, under suitable and accurate instructions in matters of law. The wrongful taking of goods by a party with an intent to assume them as his own, or to convert them to his own use, is a trespass merely. And in many cases the subsequent fraudulent appropriation and conversion of goods, the possession of which has been rightfully obtained, does not constitute a felony. Rosc. Crim. Ev. 472, 478; Archb. Crim. Pl. 186. But if a person by committing a trespass has tortiously and unlawfully acquired possession of personal property belonging to another, and afterwards conceives the purpose of fraudulently depriving the owner of it, and in pursuance of that design, with a

41 *

felonious intent, carries it away and converts it to his own use, he thereby commits and is guilty of the crime of larceny. 1 Hale P. C. 507; 2 East P. C. 662; *Regina* v. *Riley*, 1 Dears. C. C. 149. This is the effect and substance of the explanation and statement of the law, made by the presiding judge upon the trial. While the defendant was on his way to North Bridgewater, and also during the time of his return, until he fraudulently determined to appropriate and convert the horse to his own use, and until he did some act in execution of that purpose, he was only a trespasser; but he made himself a thief as soon as he drove or led away the horse, or made any disposition of him, with such a felonious intent. This, indeed, is not strenuously denied by his counsel, who relies, in the defence, much more upon the objection, that no larceny was committed before the arrival of the defendant at Brighton in the county of Middlesex. But it is clear that the crime had been fully committed at an earlier period. The jury must have found, under the direction of the court, that the defendant formed the determination to take the property to Brighton and there dispose of it as his own, before " the horses were shifted; " and that he drove on in execution of that design until the horse became " disabled by a fall." Here, then, while the defendant was still in the county of Bristol, are developed the existence of all the elements of the crime of larceny; the unlawful taking, the felonious intent, and the fraudulent conversion of the property to his own use. Upon such proof, a conviction was inevitable, and the verdict against the defendant must therefore be affirmed. *Exceptions overruled.*